UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

NICHOLAS JAMAL-LEEVEL THOMAS,

                    Petitioner,               Case No. 1:18-cv-704

v.                                     Honorable Paul L. Maloney

KEVIN LINDSEY,

                    Respondent.

_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Nicholas Jamal-Leevel Thomas is incarcerated with the Michigan Department of Corrections at the E.C. Brooks Correctional Facility in Muskegon Heights, Michigan. Following a two-day jury trial in the Kent County Circuit Court, Petitioner was convicted of assault with intent to do great bodily harm less than murder (AGBH), in violation of Mich. Comp. Laws § 750.84; carrying a concealed weapon without a license (CCW), in violation of Mich. Comp. Laws § 750.227; being a felon in possession of a firearm (FIP), in violation of Mich. Comp. Laws § 750.224f; and possession of a firearm during the commission of a felony (felony-firearm), in violation of Mich. Comp. Laws § 750.227b. The jury acquitted Petitioner on a charge of assault with intent to murder (AWIM). On March 5, 2015, the court sentenced Petitioner as a fourth habitual offender, Mich. Comp. Laws § 769.12, to concurrent prison terms of 25 to 75 years' imprisonment for the AGBH conviction, 8 to 60 years for the CCW conviction, and 8 to 60 years for the FIP conviction; all to be served consecutively to a sentence of 2 years for the felony-firearm conviction.

On June 26, 2018, the Court received Petitioner's timely-filed habeas corpus petition which raises three grounds for relief, as follows:

I.      Petitioner was denied his Sixth Amendment right to effective assistance of counsel in the following ways: (A) counsel failed to object to admission of the shortened and incomplete video showing only a small portion of the fight, which was not properly authenticated and was more prejudicial than probative; (B) counsel failed [to] investigate several live witnesses to the fight; (C) counsel failed to request state funds to secure [the] assistance of an investigator and medical expert; and (D) counsel failed to object to the prosecutorial misconduct.

II.     Petitioner was deprived of his right to present a defense and to a properly instructed jury when the state court denied his request for a self-defense instruction.

III.    The state court rendered counsel ineffective when it stubbornly refused to grant a reasonable continuance after counsel had been assigned to the case.

(Pet., ECF No. 1, PageID.4.)  Respondent has filed an answer to the petition (ECF No. 6) stating that the grounds should be denied because they without merit.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are without merit.  Accordingly, I recommend that the petition be denied.

## Discussion

## I.      Factual allegations

On July 9, 2014, Petitioner and Tony Floyd were engaged in a fistfight at the intersection of Dallas Avenue and Alexander Street in Grand Rapids, Michigan.  A couple of minutes into the fight, Petitioner removed a handgun from his pocket and shot Floyd.  Those facts are undisputed and, at least for the last few seconds of the fight, supported by a video taken by a bystander.

Floyd survived.  The prosecutor charged Petitioner, a felon, with AWIM, AGBH, CCW, FIP, and felony-firearm.  Petitioner claimed his actions were justified by self-defense.

The facts underlying Petitioner's claim of self-defense were disputed.  According to Petitioner, he was unknowingly pulled into a dispute between Floyd and Petitioner's friend, Chris Shackleford.  Petitioner contends that he was driving Shackleford around town when they were ambushed by Floyd and a crowd of Floyd's supporters, including gang members, at the intersection.  Shackleford pulled out a gun.  Petitioner took it from him to prevent Shackleford from "doing something stupid."  (Trial Tr. II, ECF No. 7-5, PageID.229.)  Floyd came to Petitioner's side of the car, pulled the door open and punched Petitioner in the eye.  Petitioner exited the vehicle—putting Shackleford's gun in his pocket as he did so.  Fisticuffs ensued.

The crowd yelled encouragement to Floyd.  As the fight progressed Petitioner saw one bystander pull a gun.  Floyd then landed a flurry of punches.  Petitioner perceived that he was in danger.  He pulled Shackleford's gun out of his pocket and, to permit his escape, tried to shoot Floyd in the leg.  Floyd hunched up, and the bullet entered his abdomen.  The crowd scattered and Petitioner and Shackleford fled.

Floyd testified that there was no ambush.  He invited Petitioner and Shackleford to meet him at the intersection because they were "talking crap about [Floyd]."  (Trial Tr. I, ECF No. 7-4, PageID.199.)  Floyd wanted to fight them and, according to Floyd, Petitioner knew about the planned fight when he arrived at the intersection.  Floyd called Petitioner out of the car.  Floyd threw the first punch.

Floyd testified that he was not aware of any guns at the scene.  He was not even certain who shot him.  Floyd was not a particularly cooperative witness.  He was jailed on a material witness warrant before trial (Material Witness Warrant Arraignment Tr., ECF No. 7-3), and the trial court again took him into custody during his trial testimony out of concern that he might leave during a recess (Trial Tr. I, ECF No. 7-4, PageID.201-202).

3

The court instructed the jury on Petitioner's self-defense claim—at least with respect to the AWIM, AGBH, and felony-firearm charges.  The jury deliberated for a little more than an hour before returning its verdict.  (Trial Tr. II, ECF No. 7-5, PageID.249-250.)

Petitioner appealed the judgment of conviction to the Michigan Court of Appeals. In the brief that Petitioner filed with the assistance of counsel, Petitioner raised the issues he raises in his habeas petition as issues I.A. and II.   (Pet'r's Appeal Br., ECF No. 7-7, PageID.285.) Petitioner raised several additional issues in a *pro per* supplemental brief, including the issues he raises in his habeas petition as issue I.B.-D. and III.  (Pet'r's Supp. Appeal Br., ECF No. 7-7, PageID.355-370.)  By unpublished opinion issued November 22, 2016, the Michigan Court of Appeals denied Petitioner relief and affirmed the trial court.  (Mich. Ct. App. Op., ECF No. 7-7, PageID.258-270.)

Petitioner then filed an application for leave to appeal in the Michigan Supreme Court that included all of the issues he raised in the court of appeals.  The supreme court denied leave to appeal by order entered June 27, 2017.   (Mich. Order, ECF No. 7-8, PageID.371.) Petitioner did not petition for certiorari in the United States Supreme Court.  (Pet., ECF No. 1, PageID.3.)  Instead, he filed his habeas petition in this Court.

## II.    AEDPA standard

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an

unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their

adjudication of a prisoner's claims."  *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656.  This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court.  *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III.    Self-defense (habeas issue II)

The trial court instructed the jury that a person acting in lawful self-defense is not guilty; however, the court specifically limited that statement to the charges of AWIM, AGBH, and felony-firearm.  (Trial Tr. II, ECF No. 7-5, PageID.236.)  Petitioner contends that when he took possession of the firearm, his act was justified by concerns for the safety of others.  Petitioner's trial counsel sought an instruction to that effect based on the authority of *People v. Dupree*, 788 N.W.2d 399 (Mich. 2010), which held that self-defense/defense of others might justify a violation of the FIP statute.  (Trial Tr. II, ECF No. 7-5, PageID.249.)

The matter may have been discussed at length in chambers; the brief discussion of the objection after the instructions were read is not particularly enlightening.  (*Id.*)  It is clear, however, that Petitioner's trial counsel relied on *Dupree*.  In *Dupree*, the felon took possession of the firearm in the middle of a fight.  He took possession of the firearm from the victim.  Dupree argued that the same considerations of self-defense that justified his use of the firearm to shoot the victim justified his taking of possession of the firearm during their fight.  The jury, apparently,

excused Dupree's use of the firearm on self-defense grounds, but not his possession of it.  Dupree attributed that apparent inconsistency on faulty instructions.  The Michigan Supreme Court agreed.

Petitioner's prosecutor argued that Petitioner's situation was not like Dupree's.  He argued that the circumstances that purportedly justified Petitioner's use of the firearm arose long after Petitioner took possession of the firearm.  (Trial Tr. II, ECF No. 7-5, PageID.249.)  Therefore, even if Petitioner were justified in using the firearm, he was not justified in taking possession of it.

The prosecutor's argument apparently swayed the trial judge.  The court stated: "I do not believe under the facts and circumstances of this case that [*Dupree* is] applicable, and so I did not read [the instruction.]"  (*Id*.)  The Michigan Court of Appeals also appeared to rely on the premise that Petitioner's FIP justification argument was the same as his AWIM, AGBH, and felony-firearm justification argument: "As the jury rejected defendant's self-defense theory in relation to the other weapons offenses, there is no reason to believe it would have accepted the defense against his felon-in-possession charge."  (Mich. Ct. App. Op., ECF No. 7-7, PageID.266.)

Certainly, to the extent Petitioner was arguing that the perceived threat of harm to himself—the threat that justified his discharge of the firearm at Floyd—also justified his taking possession of the firearm in the car, the prosecutor's argument, the trial court's decision, and the court of appeals' determination are well-grounded.  That threat was not apparent when Petitioner took the gun from Shackleford.  But, that does not appear to be Petitioner's argument at all.  Instead, he claims he took the gun to prevent Shackleford from harming Floyd.  The court of appeals recognized that distinction, stating "[a]rguably, defendant took possession of the gun despite his felon status to prevent imminent harm to another."  (Mich. Ct. App. Op., ECF No. 7-7,

PageID.266.)  Yet, the court ignored that distinction when it ruled against Petitioner based on the jury's rejection of the other justification claim.  (*Id.*)

Petitioner's claim is, at its heart, a claim that the trial court failed to properly instruct the jury when it failed to tell the jury it could consider a "defense of others" justification as a defense to the FIP charge.  The fact that a jury instruction is flawed under state law is not a basis for habeas relief.  *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991).  The sole question on habeas review is "'whether the ailing instruction, by itself so infected the entire trial that the resulting conviction violates due process.'" *Id.* (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).  The Supreme Court has defined that "'category of infractions . . . very narrowly.'"  *Id.* at 73 (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)).

The Due Process Clause requires that every element of the charged crime be proven beyond a reasonable doubt.  *In re Winship*, 397 U.S. 358, 364 (1970).  When a jury is not properly instructed with regard to the elements of the charged crime, the due process right to proof beyond a reasonable doubt is implicated.  *Sandstrom v. Montana*, 442 U.S. 510 (1979).  It is the prerogative of the state, however, to define the elements of the crime and the federal courts are bound by their determination.  *See Johnson v. United States*, 559 U.S. 133, 138 (2010) ("We are, however, bound by the Florida Supreme Court's interpretation of state law, including its determination of the elements . . . ."); *Jackson v. Virginia*, 443 U.S. 307, 324 n.16 (1979) ("The respondents have suggested that this constitutional standard will invite intrusions upon the power of the States to define criminal offenses.  Quite to the contrary, the standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law.").

Similarly, the Due Process Clause guarantees criminal defendants a meaningful opportunity to present a complete defense.  *California v. Trombetta*, 467 U.S. 479, 485 (1984).

Nonetheless, it is also the prerogative of the state to define whether or not a defense applies to a particular crime.  *See Foucha v. Louisiana*, 504 U.S. 71, 96 (1992) (acknowledging "the general rule that the definition of both crimes and defenses is a matter of state law . . . ."); *Gimotty v. Elo*, 40 F. App'x 29, 32 (6th Cir. 2002) ("States are free to define the elements of, and defenses to, crimes. . . . In determining whether a petitioner was entitled to a defense under state law, federal courts must defer to state-court interpretations of the state's laws . . . .").  Therefore, the state can decide whether or under what circumstances "defense of others" justifies a felon's possession of a firearm, and the state court's determination regarding the issue binds this Court.  *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle*, 502 U.S. at 68; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975).  The Sixth Circuit repeatedly has recognized "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'"  *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76); *see also Thomas v. Stephenson*, 898 F.3d 693, 700 n.1 (6th Cir. 2018).

Petitioner attempts to elevate his "defense of others" claim beyond the limits of state law when he contends he was denied the opportunity to present a complete defense.  He claims the trial court should have instructed the jury on the elements of the affirmative defense of "defense of others" with respect to the FIP charge.  The Michigan Court of Appeals concluded otherwise.

There is no clearly established federal law mandating that a state court issue an instruction on self-defense.  *Phillips v. Million*, 374 F.3d 395, 397-98 (6th Cir. 2004) (holding that no clearly established Supreme Court requires a state court to issue an instruction on self-defense).  The Sixth Circuit has concluded that the instruction is constitutionally required under certain circumstances.  *Taylor v. Withrow*, 288 F.3d 846, 851 (6th Cir. 2002) (holding that the right of a

9

defendant to claim self-defense is a fundamental right and that, where sufficient evidence to support the charge is introduced, the failure to give the charge violates his due process right to present a complete defense).  Circuit authority, however, does not suffice to clearly establish federal law for purposes of the AEDPA.  *See Lopez v. Smith*, 574 U.S. 1, 7 (2014) ("Circuit precedent cannot 'refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not announced.'") (quoting *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013)).[1]  Therefore, Petitioner cannot prevail on a claim under 28 U.S.C. 2254(d)(1) because there is no "clearly established federal law" the Michigan Court of Appeals could have unreasonably applied or to which the Michigan Court of Appeals determination might be contrary.

The only possible ground for Petitioner's claim, then, is that the Michigan courts' adjudications of his claim are based on unreasonable determinations of the facts.  28 U.S.C. § 2254(d)(2).  That begs the question: has Petitioner shown that the state appellate court's determination that "there [was] no reason to believe [the jury] would have accepted the defense" is unreasonable on this record?  He has not, for several reasons.  First, the record does not strongly support the claim that Petitioner took the gun to protect Floyd from harm; to the contrary, it appears equally likely that Petitioner took the gun to protect himself, his car, or Shackleford from criminal prosecution.  Petitioner testified:

---

[1] The Sixth Circuit's analysis in *Taylor* appears to be exactly the sort of "refining" or "sharpening" of a general principle into a specific legal rule that *Marshall* and *Lopez* cautioned against.  The *Taylor* majority relied on Supreme Court authority with respect to the general rule regarding a defendant's right to present a complete defense, and then announced a necessary corollary of that rule that a defendant has the right to have the jury instructed on his or her defense, under appropriate circumstances.  *Taylor*, 288 F.3d at 851-52.  The *Taylor* majority looked to deeply rooted tradition, federal criminal law not expressly grounded in the United States Constitution, and the conclusions of other Courts of Appeals to support its corollary, but not to United States Supreme Court constitutional decisions.  *Id*. at 852-53.  The *Taylor* majority stated: "The earth is not flat, nor does the sun revolve around it, but we do not need to be told that by the Supreme Court in order for us to apply it in a case."  *Id*. at 853.  Judge Boggs, in his concurring opinion, thought the majority had stepped beyond the bounds of the AEDPA: "We must find that this fundamental constitutional rule has been clearly established by Supreme Court precedent.  It has not been."  *Id*. at 854-55 (footnote omitted).

> "I took the gun from him 'cuz I told him he couldn't do it while he was in the car with me. I couldn't be around that."
>
> "I'm going back and forth with Schackleford about him getting out and doing something stupid. I thought I was preventing something dumb from happening; and I end up doing some dumb shit . . . ."
>
> "When I grabbed the gun, I didn't grab it with the intent to commit a felony. I grabbed it with the intent to stop him from committing a felony. So I felt that whether I got caught with the gun, it would have been better than letting him shoot somebody. He'd get life. So that's why I grabbed the gun. I was trying to stop a crime from happening."
>
> "[Schackleford] said he was gonna get out and shoot the guy."
>
> "He said he was going to shoot Tony Floyd. It wasn't like,--he's not that kind of person. He don't even have a felony. Ain't like he was lookin' for one. So when I grabbed the gun, I did it out of just pure—trying to prevent something from happening."
>
> "I thought I was preventing a situation from happening, and it got worse. Ain't no excuse. Ain't no way to put it. I didn't want nobody to get hurt, and it turned out somebody got hurt."

(Trial Tr. II, ECF No. 7-5, PageID.228, 229, 232, 234.) Moreover, even if Petitioner's taking of the gun from Schackleford might have been motivated by a concern for Tony Floyd, it does not explain why Petitioner slid the gun into his pocket as Floyd called Petitioner out of the car. Schackleford was already out of the car at that time. Petitioner's pocketing of the weapon did not appear to further his protective impulses. Indeed, Petitioner's eventual shooting of Floyd points out the absurdity of claiming that the additional exercise of dominion over the gun---Petitioner's pocketing of it as he left the vehicle to confront Floyd—was motivated by Petitioner's intention to protect Floyd. Therefore, Petitioner has failed to demonstrate that the state appellate court's rejection of his claim is based upon an unreasonable determination of the facts.

Even if Petitioner's "defense of others" jury instruction challenge were a closer question, habeas relief would not be warranted. The "concurrent sentencing doctrine" invests the court with discretion to decline to hear a substantive challenge to a conviction when the sentence

the petitioner is serving on the challenged conviction is concurrent with an equal or longer sentence on a valid conviction.  *See United States v. Hughes*, 964 F.2d 536, 541 (6th Cir. 1992); *Dale v. Haeberlin*, 878 F.2d 930, 935 n.3 (6th Cir. 1989).  The doctrine has its origins in appellate practice applicable to direct review of criminal cases.  *See Benton v. Maryland*, 395 U.S. 784, 788-91 (1969); *Hirabayashi v. United States*, 320 U.S. 81 (1943).  In these cases, the Supreme Court and the Sixth Circuit have declined to review convictions on one count where the presence of a valid concurrent count is sufficient to retain the defendant in custody.  *See, e.g., Hirabayashi*, 320 U.S. at 105; *United States v. Burkhart*, 529 F.2d 168, 169 (6th Cir. 1976).  The standard guiding the court's discretion is whether there is any possibility of an adverse "collateral consequence" if the conviction is allowed to stand.  *See Hughes*, 964 F.2d at 541; *Dale*, 878 F.2d at 935 n.3; *see also United States v. Byrd*, No. 89-6448, 1990 WL 116538, at *3 (6th Cir. Aug. 13, 1990); *United States v. Jackson*, No. 99-5889, 2000 WL 1290360, at *2 (6th Cir. Sept. 7, 2000); *United States v. Bell*, No. 95-6479, 1997 WL 63150, at *3 (6th Cir. Feb. 12, 1997).

Although the doctrine has its roots in direct appeals, the federal courts apply it in habeas corpus actions, citing the futility of reviewing a conviction that will not result in a petitioner's release from custody.  *See, e.g., Cranmer v. Chapleau*, No. 95-6508, 1996 WL 465025 (6th Cir. Aug. 13, 1996); *Scott v. Louisiana*, 934 F.2d 631, 635 (5th Cir. 1991); *Williams v. Maggio*, 714 F.2d 554 (5th Cir. 1983); *VanGeldern v. Field*, 498 F.2d 400, 403 (9th Cir. 1974).  The exercise of the court's discretion depends upon the degree of prejudice that may be attributed to the challenged conviction and, specifically, the effect of any adverse collateral consequence if the conviction is allowed to stand.  *Williams*, 714 F.2d at 555.  "'[A]dverse collateral consequences' such as 'delay of eligibility for parole, a harsher sentence under a recidivist statute for any future offense, credibility impeachment, and societal stigma[,]'" may be considered.  *Buffin*

*v. United States*, 513 F. App'x 441, 448 (6th Cir. 2013).  In *Pillette v. Berghuis*, 408 F. App'x 873, 886 n.8 (6th Cir. 2010), the Sixth Circuit also included "an effect on . . . a potential pardon" and "the potential for use as evidence of a prior bad act" as additional adverse consequences.  *Id.*

Such remote consequences, however, "are most salient on direct appeal, not on a collateral challenge."  *Buffin,* 513 F. App'x at 448.  The *Buffin* court pulled the list of collateral consequences from *United States v. DiCarlo*, 434 F.3d 447, 457 (6th Cir. 2006).  The *DiCarlo* court, in turn, quoted the list from *Rutledge v. United States*, 517 U.S. 292, 301-02 (1996).  The *Rutledge* Court derived the list of collateral consequences from *Benton v. Maryland*, 395 U.S. 784, 790-91 (1969), and *Sibron v. New York*, 392 U.S. 40, 54-56 (1968).  *DiCarlo*, *Rutledge*, *Benton* and *Sibron* were direct appeals.  Moreover, *Benton* and *Sibron* considered the existence of collateral consequences because absent such a consequence there would have been no justiciable controversy in those cases.  The *Benton* Court noted that the fact that it could conceive of collateral consequences that might give rise to a justiciable controversy and permit the court to exercise jurisdiction did not deprive the concurrent sentencing doctrine of validity as a rule of judicial convenience.  *Benton*, 395 U.S. at 791.  The *Benton* Court simply chose to not apply it in that case. *Id*. at 792.  *Rutledge* and *DiCarlo* (and the other cases cited in *DiCarlo*) are all double jeopardy cases where the existence of collateral consequences, no matter how slight, creates the multiple punishments barred by the Double Jeopardy Clause.  Such slight or remote collateral consequences should not preclude application of the concurrent sentencing doctrine when jurisdictional and double jeopardy considerations are not at issue.  If they did, the doctrine would simply disappear.

The present case is appropriate for application of the concurrent sentencing doctrine.  Petitioner is serving a sentence for FIP of 8 to 60 years.  Petitioner is also serving concurrently a sentence for CCW of 8 to 60 years and a sentence for AGBH of 25 to 75 years.  The

"defense of others" jury instruction challenge impacts only the FIP conviction.  The trial court instructed the jury regarding Petitioner's claimed justification for the AGBH and felony-firearm charges and it appears that Michigan does not recognize "defense of others" as a justification for CCW where the weapon is a pistol.[2]  Thus, even if the court were to vacate that conviction, the maximum relief available would be invalidation of that sentence, still leaving Petitioner with the concurrent 8 to 60 year and 25 to 75 year sentences.  Release from prison would not be available even if the conviction and sentence for FIP were vacated.

Moreover, the sorts of collateral consequences that counsel against application of the doctrine seem to be unlikely in Petitioner's case.  Petitioner has already worked himself up to the very peak of Michigan's habitual offender sentencing scheme.  Even if Petitioner's FIP conviction is overturned he will remain in the habitual-offender, fourth-offense category—the highest category under Michigan's habitual offender enhanced sentencing scheme.  Mich. Comp. Laws § 769.12.  Petitioner's significant criminal history would rob this particular weapons offense of any singular significance in the eyes of a subsequent parole board, jury, or pardoning authority.  Further, the stigma associated with Petitioner's criminal history is not likely to be meaningfully reduced if Petitioner's FIP conviction were removed.

If the concurrent sentencing doctrine retains any vitality—and the Supreme Court and the Sixth Circuit Court of Appeals indicate that it does—this is a case where it should be applied.  Thus, if Petitioner's "defense of others" instruction claim appeared to have even

---

[2] The justification of "defense of others" could serve as a defense to a charge of CCW where the weapon is an "other dangerous" type of stabbing instrument under Mich. Comp. Laws § 750.227(1).  *See People v. Triplett*, 878 N.W.2d 811 (Mich. 2016).  That is the case because "possession" of such a weapon only violates the statute when it is used as a weapon.  *Triplett*, 878 N.W.2d at 815.  When the weapon being concealed is a pistol, the crime occurs upon concealed possession, not use.  Therefore, the justification for use and the justification for concealed possession do not necessarily coincide.  *Triplett*, 878 N.W. 2d at 815; *see also People v. Hernandez-Garcia*, 728 N.W.2d 406 (Mich. 2007).

questionable merit, I would recommend that the Court exercise its discretion and decline to consider the claim.

However, Petitioner has failed to show that the state appellate court's rejection of his jury instruction claim is contrary to, or an unreasonable application of, clearly established federal law, or that it is based on an unreasonable determination of the facts.  Accordingly, his habeas claim fails on the merits.

## IV.    Continuance

Petitioner contends that he was deprived of due process because the trial court refused to grant a continuance when Petitioner received substitute appointed counsel:

> Defendant had acquired an Attorney new, and He wasn't prepared and on 1-21-14 he went into Court and asked for an adjournment and the Court refused Him.  And stated that, You and Your Client have two hours to be ready to start the Jury selection and to begin Trial.  And the Attorney made the proper objection on the 1-21-2014 record.

(Pet'r's Supp. Appeal Br., ECF No. 7-7, PageID.356.)  The court of appeals rejected the claim because "there is no record of any such request being made."  (Mich. Ct. App. Op., ECF No. 7-7, PageID.267.)  Petitioner offers nothing to indicate that the court of appeals' determination of fact regarding the absence of such a request is unreasonable.  Accordingly, he is not entitled to habeas relief.

## V.    Ineffective assistance of counsel

Petitioner contends his counsel rendered ineffective assistance in four respects: (A) counsel failed to object to admission of the shortened and incomplete video; (B) counsel failed to investigate several live witnesses to the fight; (C) counsel failed to request state funds to secure the assistance of an investigator and medical expert; and (D) counsel failed to object to prosecutorial misconduct.  In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance

of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  *Id.* at 687.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance."  *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential.  *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 13 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011).  In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*; *see also Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of

prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

### A.    The video

Petitioner contends that counsel was ineffective when he did not object to introduction of the video, which was incomplete, never authenticated, and more prejudicial than probative.  The only video available was a 10 to 15 second excerpt that captured the end of the fight and the gunshot.  A longer video was posted to Facebook; however, the longer version was removed.  Neither party introduced the longer version, or even identified the person who captured the video.  The shortened version was supplied to police by Tony Floyd's mother, who received it in its shortened form from one of the bystanders.

Petitioner's contention that counsel failed to object to introduction of the shortened version of the video is factually unsupported with regard to the completeness and authentication of the video.  Counsel raised both issues with the trial court before the court admitted the video. (Trial Tr. I, ECF No. 7-4, PageID.202.)  Therefore, Petitioner's contention that counsel rendered ineffective assistance for failing to pose those objections is plainly meritless.

Moreover, the court of appeals concluded that the video was properly authenticated under Michigan Rule of Evidence 901; it was sufficiently complete under Michigan Rule of Evidence 106; and, under Michigan Rule of Evidence 403, the video was "obviously highly probative" and not "overly prejudicial."  (Mich. Ct. App. Op., ECF No. 7-7, PageID.260-263.) Those conclusions—that the video was properly admitted under each of the three cited Michigan Rules of Evidence—are binding on this Court.  *Stumpf*, 722 F.3d at 746 n.6; *Thomas*, 898 F.3d at 700 n.1.  Therefore, objections to the video's authentication, completeness, or unduly prejudicial character would be futile.

Counsel need not raise futile arguments.  "Omitting meritless arguments is neither professionally unreasonable nor prejudicial."  *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013). Accordingly, Petitioner has failed to show that the state court of appeals rejection of Petitioner's claims relating to the video are contrary to, or an unreasonable application of, clearly established federal law.  Petitioner is not entitled to habeas relief on this claim.

### B.    Failure to investigate witnesses

Petitioner contends that counsel failed to investigate witnesses to the fight, witnesses who might have been able to corroborate Petitioner's testimony regarding the presence of weapons in the crowd.  The court of appeals rejected Petitioner's contention:

> Here, we learned the names of several additional witnesses that the prosecution and defense counsel should have at least interviewed in preparing for trial.  These witnesses included Brandon Brown (Schmoit), Chris Kilgore, and Brittany Marshall.  Counsel for both sides also should have met with Chris Shackleford, who arrived at the scene with defendant.  The parties also should have attempted to identify those individuals shown in the crowd during the video clip.  This would include the woman holding the phone in a bright pink case, who recorded the fight from a different vantage point.  Counsel also should have reviewed Brittany Adams's and Brittany Marshall's Facebook pages to ascertain whether either maintained a longer recording of the fight on their pages.  If not, counsel could have researched whether videos removed by account holders can be recovered.  The presence of these witnesses and additional video footage could have changed the outcome on whether the video was overly prejudicial.  Such evidence could have supported defendant's version of events.
>
> Yet on this record, we cannot declare that defense counsel did not take these actions.  It is possible that counsel actually met with these individuals and learned that they would provide damaging testimony or that none possessed additional video evidence.  The witnesses may have refused to speak to defense counsel.  Facebook research may have led to a dead end.  It is equally possible that defense counsel sat back and made no investigation.  However, we can make no assumptions and therefore cannot adjudge counsel ineffective.  Accordingly, we are bound to reject defendant's ineffective assistance claim.

(Mich. Ct. App. Op., ECF No. 7-7, PageID.265.)

As noted above, *Strickland* requires that this Court "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.

18

*Strickland*, 466 U.S. at 689.  Petitioner "bears the burden of overcoming that presumption . . . ." *Id*.  Petitioner has failed to meet his burden.  He suggests that counsel should have done more, but he does not show, and the record does not support, that counsel did not conduct the very investigation that Petitioner contends counsel should have conducted.

That was the determination of the court of appeals, that the record does not support Petitioner's claim.  This Court has scoured the record to find some indication that the court of appeals' determination was unreasonable, to no avail.  The record reasonably supports the court of appeals' determination.  Petitioner has failed to show that the state appellate court's rejection of his ineffective assistance claim related to pretrial investigation of witnesses is contrary to, or an unreasonable application of, *Strickland*.  Accordingly, Petitioner is not entitled to habeas relief on this claim.

### C.    Failure to request an investigator and a medical expert

Petitioner contends counsel should have secured the assistance of a medical expert "to shed light and explain the angles of the entry wound to the victim in this case, that they [were] consistent with a struggle . . . ."  (Pet'r's Supp. Appeal Br., ECF No. 7-7, PageID.362.)  Petitioner's purpose in seeking an investigator is not revealed in his brief; but, presumably, Petitioner sought an investigator to question members of the crowd and to explore the origin of the video.

With regard to the proposed expert, the court of appeals rejected the claim because "Defendant has not identified any potential expert witness, nor has he established by affidavit or report that any expert could have testified in the manner he advocates."  (Mich. Ct. App. Op., ECF No. 7-7, PageID.268.)  Similarly, with regard to the investigator, the court of appeals rejected the claim because "despite being able to identify some of the individuals present or possessing fight footage, defendant has taken no action to at least present witness affidavits to support that these witnesses would have been helpful."  (*Id*.)

19

Without some evidence to show that counsel's pursuit of an expert witness or an investigator would have borne fruit, Petitioner cannot establish that it was a mistake for counsel to forgo the opportunity or that Petitioner was prejudiced by the mistake.  It is Petitioner's burden to make these showings.  He has failed.  Accordingly, he cannot establish that the court of appeals' rejection of these ineffective assistance claims is contrary to, or an unreasonable application of, clearly established federal law.

### D.    Failure to object to prosecutorial misconduct

Finally, Petitioner claims that his counsel rendered ineffective assistance because counsel failed to object to prosecutorial misconduct during closing arguments.  Petitioner identifies two statements during the prosecutor's closing arguments that he contends should have prompted an objection from counsel:

> "And that's a pretty easy count for us to conclude that the defendant is guilty of."

> "Again, we know the defendant intended to kill Tony Floyd because at the time he pulled the gun out of the pocket, it didn't not—it's—it's completely loaded, it's completely cocked."

(Pet'r's Supp. App. Br., ECF No. 7-7, PageID.368 quoting Trial Tr. II, ECF No. 7-5, PageID.238-239.)

Misconduct by a prosecutor can rise to the level of a due process violation.  *Lundy v. Campbell*, 888 F.2d 467, 474 (6th Cir. 1989).  However, before habeas corpus relief becomes available, the misconduct must be so egregious as to deny petitioner a fundamentally fair trial.  *Serra v. Mich. Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir. 1993).  The habeas court must consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner, whether it was isolated or extensive, and whether the claimed misconduct was deliberate or accidental.  *See United States v. Young*, 470 U.S. 1, 11-12 (1985).  In addition, the court may view any misconduct in light of the strength of the competent proofs tending to establish guilt.  *See*

*Angel v. Overburg*, 682 F.2d 605, 608 (6th Cir. 1982) (*en banc*).  "When a petitioner makes a claim of prosecutorial misconduct, 'the touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor.'"  *Serra*, 4 F.3d at 1355 (quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982)).  "This court has been reluctant to grant habeas petitions based on improper prosecutorial statements at closing argument."   *Wilson v. Mitchell*, 250 F.3d 388, 398 (6th Cir. 2001).  Prosecutors "must be given leeway to argue reasonable inferences from the evidence."  *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000) (quoting *United States v. Collins*, 78 F.3d 1021, 1040 (6th Cir. 1996)).

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)).  Indeed, "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'"  *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 645 (1974)).  Thus, in order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"  *Parker v. Matthews*, 567 U.S. 37, 47 (2012) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

The court of appeals resolved Petitioner's claims of prosecutorial misconduct as follows:

> The prosecutor "is not required to state inferences and conclusions in the blandest possible terms."  *People v Unger*, 278 Mich App 210, 239; 749 NW2d 272 (2008).  "Where the prosecutor's argument is based upon the evidence and does not suggest that the jury decide the case on the authority of the prosecutor's office, the words

'I believe' or 'I want you to convict' are not improper." *People v Swartz*, 171 Mich App 364, 371; 429 NW2d 905 (1988).  The "crucial inquiry" is not whether the prosecutor used personal words, such as "I" or "we," but whether the prosecutor was attempting to vouch for the defendant's guilt.  *People v Reed*, 449 Mich 375, 399; 535 NW2d 496 (1995) (BOYLE, J.).

In this case, the challenged statements do not represent a personal plea by the prosecutor that the jury find defendant guilty or a personal opinion by the prosecutor that defendant was guilty.  The comments followed statements discussing the evidence and how the evidence supported the elements of the charged crimes.  They are devoid of any suggestion by the prosecutor that he had any special knowledge regarding the case from which he could vouch for the evidence at trial.  Instead, the prosecutor simply made arguments, based on the evidence presented at trial, that the elements of each of the crimes charged was met.  Thus, even though the prosecutor used the words "us" and "we" while arguing that the evidence supported that defendant was guilty of the charged crimes, the prosecutor's challenged statements were not improper and did not prejudice defendant.

(Mich. Ct. App. Op., ECF No 7-7, PageID.269-270.)

The court of appeals' decision is not lacking in justification at all.  Examination of the statements which Petitioner finds objectionable, in context, reveals that they are arguments that followed a recitation of the evidence presented at trial.  Each statement is well-grounded in testimony—including Petitioner's own testimony—and the video.  The court of appeals factual determinations, therefore, are reasonable on the record, and the court's legal conclusions are entirely consistent with clearly established federal law.

Because there is no prosecutorial misconduct, there was no ground for counsel to object and his failure to object was neither professionally unreasonable nor prejudicial.  The court of appeals' conclusion to that effect is entirely consistent with *Strickland*.  Accordingly, Petitioner is not entitled to habeas relief on this ineffective assistance of counsel claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a

"substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, I have examined each of Petitioner's claims under the *Slack* standard.  Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong.  Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

Moreover, although I conclude that Petitioner has failed to demonstrate that he is in custody in violation of the constitution and has failed to make a substantial showing of a denial of a constitutional right, I would not conclude that any issue Petitioner might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

**Recommended Disposition**

For the foregoing reasons, I recommend that the habeas corpus petition be denied.

I further recommend that a certificate of appealability be denied.  Finally, I recommend that the

Court not certify that an appeal would not be taken in good faith.


Dated:    April 9, 2020                              /s/ Ray Kent                                   
                                                     Ray Kent
                                                     United States Magistrate Judge


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of
service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and
responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely
objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638
F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).